Case 4:25-mc-01950   Document 7   Filed on 11/17/25 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
November 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE: § | |
| *EX PARTE* APPLICATION OF § | Misc. Action No. 4:25-MC-01950 |
| OVIK MKRTCHYAN § | |

## MEMORANDUM OPINION AND ORDER

Applicant Ovik Mkrtchyan is an Armenian-Uzbek businessman who owns several companies in the United Kingdom, Switzerland, Uzbekistan, and Latvia. In April 2025, Mkrtchyan brought two actions in English court against Radha Stirling and the owners of *The London Post* news site for alleged libelous articles they published accusing Mkrtchyan of participating in various international corruption schemes. According to Mkrtchyan, these articles are part of a nefarious campaign to systematically destroy his reputation and to orchestrate his illegal detention in Uzbekistan. In order to pursue his claims in English court, Mkrtchyan asserts that he needs discovery from Straife LLC ("Straife"), its CEO Joseph Fleming, and its subsidiary Hyperfocal Communications LLC ("Hyperfocal") (collectively, "the Respondents"), all alleged players in the campaign against him. All three Respondents can be located in Houston, Texas.

Pending before the Court is Mkrtchyan's Letter Rogatory/Request for Judicial Assistance as to Ex Parte Application of Ovik Mkrtchyan for an Order to Take Discovery under 28 U.S.C. § 1782. (Dkt. No. 1). For the following reasons, Mkrtchyan's Request for Judicial Assistance is **GRANTED**.

**I.      BACKGROUND**

Mkrtchyan's allegations span multiple countries and involve a variety of players. In brief, he asserts that there is "an ongoing campaign by individuals and entities around the world [including Respondents] to injure [him] tortiously and by unlawful means." (Dkt. No. 2 at 5). The relevant facts can be broken into two chapters: the Uzbek detention chapter and the libel campaign chapter.[1]

**A.      THE UZBEK DETENTION CHAPTER**

Self-described as "an entrepreneur and innovator," Mkrtchyan is an international businessman with companies that do business across the globe, including in Uzbekistan. (*Id.* at 7). One such company is Gor Investment Limited ("Gor"), a UK-based company that invests in "initiatives to combat infection in medical patients, process and dispose of hazardous waste, harness gas metallurgy technology for the production of nano powders of rare and precious metals, and train young engineers in Uzbekistan," among other projects. (*Id.*). Gor's advisory board has included directors such as former U.S. Secretary of State Mike Pompeo, former Texas governor Rick Perry, and former U.S. Under Secretary of State Thomas A. Shannon, Jr. (*Id.*).

These extensive business interests, according to Mkrtchyan, have made him a target, specifically in Uzbekistan. (*Id.* at 10–12). For example, in 2023 Mkrtchyan claims that he was approached by Ulugbek Shadmanov, an Uzbek businessman and principal shareholder of United Cement Group ("UCG"), who tried to convince Mkrtchyan to

---

[1] All of the facts in this Section are taken from Mkrtchyan's Memorandum of Law in support of his Request for Judicial Assistance. (Dkt. No. 2).

2

"leverage his connections in the United States [*i.e.* Pompeo and Shannon] to put certain Uzbek citizens on the U.S. sanctions list." (*Id.* at 11). When Mkrtchyan refused to help, Shadmanov threatened his business prospects in Uzbekistan and arranged for his unlawful detention by the Uzbek government in January 2024. (*Id.*); (Dkt. No. 3 at 5). During this months-long detention, Mkrtchyan alleges officials "confined him to a small cell, repeatedly interrogated him, denied him access to medication and other necessities, and attempted unsuccessfully to extract money and false confessions from him." (Dkt. No. 2 at 11–12).

After some time, however, Mkrtchyan's detention was ended after his former business partner and Texas businessman Stephen Payne personally wrote a letter to the President of Uzbekistan calling for Mkrtchyan's release. (*Id.* at 12). According to this letter, "[t]he true reason behind [the detention] is a conflict between Mr. Ovik Mkrtchyan on one hand, and . . . Mr. Shadmanov Ulugbek [sic] . . . on the other." (Dkt. No. 3-2 at 2). Payne's letter recounted the details of Shadmanov's corrupt request and urged the Uzbek president to intervene in Mkrtchyan's detention. (*Id.* at 2–4). This seemed to work as Mkrtchyan was released in April 2024. (Dkt. No. 2 at 12).

  B.  THE DEFAMATION CAMPAIGN CHAPTER

Following his release, Shadmanov allegedly continued his campaign against Mkrtchyan. Beginning in July 2024, several online articles were posted that disparaged Mkrtchyan and accused him of corruption. (*Id.* at 12–13). These included articles posted by *The London Post* and Radha Stirling, a U.S.-based public relations consultant. (*Id.*).

3

In addition, two more letters were sent to the Uzbek president with accusations that seemed to mirror the online posts. (*Id.* at 13–14). One letter was sent by Stephen Akard, a partner at an American law and public affairs firm, on behalf of Shadmanov and UCG. (*Id.* at 13). It claimed that UCG had retained a "preeminent U.S. corporate investigatory firm" to dispute allegations made against Shadmanov. (*Id.*). The letter went on to make allegedly false claims about Uktam Aripov, a business associate of Mkrtchyan, and accused Mkrtchyan of engaging in extortion and having ties to Russian organized crime. (*Id.*). Another letter was sent by Stephen Payne, who apparently retracted the statements he made on behalf of Mkrtchyan in his first letter, which made similar allegations. (*Id.* at 14).

According to Mkrtchyan, the corporate investigatory firm responsible for all of these libelous documents was Straife LLC. (*Id.* at 13–17). Straife is a U.S. consulting firm that has worked with Mkrtchyan and Gor for many years, rendering over $100,000 in services for the company. (*Id.* at 11). Notably, it worked with Mkrtchyan regarding his detention in Uzbekistan. (*Id.*). Both Straife and its CEO Joseph Fleming are located in Houston, Texas. (Dkt. Nos. 4-1, 4-9). For reasons that are unclear, Straife and Fleming apparently betrayed Mkrtchyan and orchestrated a public relations campaign meant to disparage and libel him.

In April 2025, Mkrtchyan responded by bringing libel claims against *The London Post* and Stirling in the High Court of Justice, Kings Bench Division in England. (*Id.* at 14). These claims allege that the defendants conspired with Straife and other unknown actors as part of a libel campaign against Mkrtchyan and seek damages and other

4

injunctive relief. (*Id.* at 15). Mkrtchyan has also indicated that he is contemplating bringing other claims in England related to these events. (Dkt. No. 2 at 16). To effectively prosecute these claims Mkrtchyan filed an action with this Court under 28 U.S.C. § 1782 seeking discovery for use in the pending and contemplated actions in English court.[2] (Dkt. No. 1).

## II.     LEGAL STANDARD

Generally, a district court may order a person who resides or is found in the district "to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). One way that this happens is when "a foreign or international tribunal" or "any interested person" requests that the district court award such discovery in accordance with the Federal Rules of Civil Procedure. *Id.* Section 1782(a) "aims to provide efficient assistance to parties litigating in foreign tribunals and, by example, to encourage foreign assistance in U.S. Courts." *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473 (5th Cir. 2022).

Section 1782 has three statutory elements: (1) the discovery is sought from an individual located in the district in which the application is filed; (2) the discovery is for use in a legal proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an "interested person." 28 U.S.C. § 1782.

---

[2]     Mkrtchyan filed a similar Section 1782 application in this District in June 2025 to obtain discovery from Payne and his affiliated corporations. *See Mkrtchyan v. Payne*, No. 4:25-MC-01122. Another court in this District granted that application. (*Mkrtchyan v. Payne*, No. 4:25-MC-01122 Dkt. No. 7).

5

Because courts are not required to grant a Section 1782 discovery application just because it has the authority to do so, courts also address four discretionary factors known as the "*Intel* factors." *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65, 124 S.Ct. 2466, 2482–84, 159 L.Ed.2d 355 (2004). These factors include: (1) whether the respondent is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the "character" of the foreign proceedings, and the receptivity of the foreign court to U.S. federal court assistance; (3) whether the request attempts to circumvent foreign proof-gathering restrictions; and (4) whether the request is "unduly intrusive or burdensome." *Id.*

## III. DISCUSSION

The Court first addresses the statutory factors of Section 1782 and then the *Intel* factors. Because all factors weigh in Mkrtchyan's favor, the Court grants his Request for Judicial Assistance.

### A. STATUTORY FACTORS

First, Mkrtchyan must show that Straife, Hyperfocal, and Fleming are all located within the Southern District of Texas. According to Straife's website, it maintains an office at 1250 Wood Branch Park Dr. #410 Houston, TX 77079. (Dkt. No. 4-1) (Dkt. No. 4-4). It has also registered with the Texas Secretary of State using that same address. (Dkt. No. 4-7). Hyperfocal's website also indicates that it has a Houston office at the same address as Straife. (Dkt. No. 5). This address was also used by Hyperfocal when it filed its Registration Statement under the Foreign Agents Registration Act. (Dkt. No. 4-2). Hyperfocal used a different Houston address when it registered with the Texas Secretary

of State. (Dkt. No. 4-8) (stating that Hyperfocal's mailing address is "950 Threadneedle Street, Suite 120, Houston, Texas 77079"). Given this, the Court is satisfied that both Straife and Hyperfocal are located within the Southern District of Texas.

The Court also finds that Fleming is located within the Southern District of Texas. Mkrtchyan has filed a sworn declaration stating that "[o]n information and belief, Fleming resides in Fort Bend County or another County within the Southern District of Texas." (Dkt. No. 3 at 2). Fleming's contact page on Straife's website also indicates that he is located in Houston. (Dkt. No. 4-9).

Second, the discovery sought must be for use before a foreign tribunal. Proceedings before the foreign tribunal may be pending or "within reasonable contemplation." *Intel Corp.*, 542 U.S. at 259, 124 S.Ct. at 2480. "The burden imposed on the applicant" to show that the discovery sought is for use in foreign proceedings "is *de minimis*." *In re Application of HydroDive Nigeria, Ltd.*, No. 4:13-MC-00477, 2013 WL 12155021, at *3 (S.D. Tex. May 29, 2013). Applicants "may seek discovery of any materials that can be made use of in the foreign proceeding to increase [its] chances of success." *Eni Ghana Expl. & Prod. Ltd. V. Gaffney Cline & Assocs., Inc.*, No. 4:22-MC-01285, 2022 WL 3156224, at *3 (S.D. Tex. Aug. 8, 2022) (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

Mkrtchyan's claims against *The London Post* and Stirling in the English High Court of Justice, King's Bench Division, (Dkt. Nos. 5-1–5-4),—as well as any future English claims related to the alleged conspiracy against him—are certainly within Section 1782's meaning of "a proceeding in a foreign or international tribunal." Further, the discovery

7

he seeks is sufficiently related to those proceedings. In his Memorandum of Law in support of his Request for Judicial Assistance, Mkrtchyan states that discovery is necessary to support his claim of "an ongoing campaign by individuals and entities around the world to injure [him] tortiously and by unlawful means." (Dkt. No. 2 at 5). This alleged campaign includes the publication of articles attacking Mkrtchyan by *The London Post* and Stirling at the direction of Straife, Fleming, and Hyperfocal. (Dkt. Nos. 2 at 12–17, 5 at 4–5) ("His case is that [*The London Post* and Stirling] were aided, funded and/or encouraged to publish by others involved in the Campaign [potentially including Straife, Fleming, and Hyperfocal].").

Finally, Mkrtchyan must be an "interested person" under Section 1782. As a litigant in the English cases, he is undoubtedly an interested person. *Intel Corp.*, 542 U.S. at 256, 124 S.Ct. at 2478 ("No doubt litigants are included among, and may be the most common example of, the "interested person[s]" who may invoke § 1782."). The statutory factors of Section 1782 have thus been met.

**B.     *INTEL* FACTORS**

The first *Intel* factor, whether the person from whom discovery is sought is a participant in the foreign proceedings, weighs in favor of granting Mkrtchyan's Request. Section 1782 is not normally appropriate when discovery is sought from a participant in a foreign proceeding because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.* at 264, 124 S.Ct. at 2483. None of the individuals or entities from whom discovery is sought here, however, are participants in the English proceedings. As such, they "may be outside the foreign

tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.* While it is possible that *The London Post* and Stirling may have the evidence sought in Mkrtchyan's Request, it does not appear that any such evidence has been produced in the English proceedings yet. *See Eni Ghana*, 2022 WL 3156224, at \*4; *In re Application of HydroDive Nigeria, Ltd.*, 2013 WL 12155021, at \*4 ("Section 1782 does not require [an applicant] to seek discovery in the foreign jurisdiction before seeking the assistance of a district court.").

The second factor concerns whether the foreign tribunal is receptive to U.S. federal court judicial assistance. *Intel Corp.*, 542 U.S. at 264, 124 S.Ct. at 2483. Courts must "analyze whether there has been a 'clear directive' from the foreign tribunal that it 'would reject evidence' produced in the United States." *See Eni Ghana*, 2022 WL 3156224, at \*4 (quoting *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010)). "A clear directive generally derives from 'authoritative proof—in the form of a judicial, executive, or legislative declaration—that the foreign jurisdiction would be hostile to such evidence.'" *Id.* (quoting *LEG Q LLC v. RSR Corp.*, No. 3:17-CV-01559, 2017 WL 2780213, at \*9 (N.D. Tex. Aug. 31, 2017)).

The U.K. has not given such a clear directive. In fact, U.S. courts "routinely find that courts in the United Kingdom . . . are [] receptive to Section 1782 discovery." *In re BM Brazil 1 Fundo de Investimento em Participacoes Multistrategia*, No. 1:23-MC-00208, 2024 WL 555780, at \*13 (S.D.N.Y. Jan. 18, 2024), *report and recommendation adopted sub nom., In re BM Brazil 1 Fundo De Investimento EM Participacoes Multistrategia*, 2024 WL 554302 (S.D.N.Y. Feb. 12, 2024); *see also LEG Q LLC*, 2017 WL 3780213, at \*9 (finding a lack of "a

9

clear directive or authoritative proof that the English High Court would reject evidence obtained with the aid of section 1782"); *Application of Sarrio S.A. for Assistance Before Foreign Tribunals*, 173 F.R.D. 190, 197 (S.D. Tex. 1995) ("[A] decision of England's highest judicial body, expressly approved a private litigant's use of section 1782 to gather evidence in the United States for use in English proceedings."); *Frasers Group PLC v. Gorman*, No. 1:23-MC-00348, WL 2023 WL 6938284, at *3 (S.D.N.Y. Oct. 19, 2023) ("England is generally receptive to § 1782 discovery requests."). Given this, the second factor also weighs in favor of granting Mkrtchyan's Request.

The third factor considers "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 265, 124 S.Ct. at 2483. "[C]oncerns of comity do not permit the Court to 'insert[] a generally applicable foreign discoverability rule into the text of § 1782.'" *Eni Ghana*, 2022 WL 3156224, at *5 (quoting *Intel Corp.*, 542 U.S. at 261, 124 S.Ct. at 2481). However, "while the court should not base its § 1782(a) decision on whether this discovery would be allowed in [the foreign country], it may consider [the foreign country's] restrictions and whether this request is an attempt to thwart those restrictions." *In re Application of RSM Prod. Corp. v. Noble Energy, Inc.*, 195 F.Supp.3d 899, 906 (S.D. Tex. June 27, 2016).

At this *ex parte* stage there is no indication that Mkrtchyan is attempting to circumvent English discoverability rules. Mkrtchyan's English counsel has stated in a sworn affidavit that "[t]he Application is [] consistent with English and Welsh law and public policy." (Dkt. No. 5 at 7). Further, given the general receptiveness of English

10

courts to Section 1782 applications, it appears unlikely that Mkrtchyan's Request is an attempt to evade English law. He has also indicated that he does not seek privileged information under English law and that he would be amenable to Straife, Fleming, and Hyperfocal providing privilege logs consistent with the Federal Rules of Civil Procedure if necessary. (Dkt. No. 2 at 26). The third factor weighs in favor of granting the Request.

The final factor concerns the intrusive and burdensome nature of the discovery requests. In determining whether a request is overbroad, the Fifth Circuit has explained that the normal discovery rules under Federal Rule of Civil Procedure 26 apply. *See Tex. Keystone, Inc. v. Prime. Nat. Res., Inc.*, 64 F.3d 548, 554 (5th Cir. 2012).

Mkrtchyan's requests are not overbroad. His subpoenas make the same seven requests for documents in Respondent's possession related to the alleged conspiracy involving them and the defendants in his English claims. (Dkt. Nos. 6-2–6-4). These requests are narrowed and focus specifically on obtaining documents related to Straife's involvement with Mkrtchyan including its role in attempting to defame him through publications by Stirling and *The London Post* and its involvement in the unlawful detention affair in Uzbekistan. (*See, e.g.*, Dkt. No. 6-2 at 6–7). The request to depose Fleming is also not overbroad given his involvement in Mkrtchyan's alleged conspiracy and complete ownership of Straife. (*See* Dkt. No. 2 at 5, 8) ("Fleming personally worked on some of Gor's most sensitive and important matters, including Mkrtchyan's unlawful detention in Uzbekistan from January-April 2024."). Regardless, any concerns involving the breadth of the subpoenas "can properly be addressed through the mechanisms, including objections and motions, specifically provided by Rule 45" after they have been

served. *LEG Q LLC*, 2017 WL 3780213, at *13. Therefore, all four *Intel* factors weigh in favor of granting Mkrtchyan's Request.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mkrtchyan's Request for Judicial Assistance. He may therefore issue and serve the subpoenas attached to his Request as Exhibits 1, 2, 3, and 4, together with a copy of this Order, in a manner consistent with the Federal Rules of Civil Procedure.

It Is SO ORDERED.

Signed on November 17, 2025.

*[Signature: Drew B. Tipton]*

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**