**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE APPLICATION OF OVIK MKRTCHYAN FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 § 1782 | § § § § § § | |
| OVIK MKRTCHYAN, | § § | Case No. 4:25-mc-01950 |
| Petitioner, | § § § | Hon. Judge Drew B. Tipton Hon. Magistrate Judge Peter Bray |
| v. | § § | |
| STRAIFE, LLC; HYPERFOCAL COMMUNICATIONS, LLC, JOSEPH P. FLEMING | § § § § | |
| Respondents. | § § § | |

**RESPONDENTS STRAIFE, LLC, HYPERFOCAL COMMUNICATIONS, LLC AND JOSEPH P. FLEMING'S OPPOSITION TO PETITIONER'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Craig Smyser
Attorney-in-Charge
State Bar No. 18777575
SDTX Bar No. 848
David Isaak
State Bar No. 24012887
SDTX Bar No. 26694
Rachael Cox
State Bar No. 24137347
SDTX Bar No. 3881153
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: 713.221.2330
Facsimile:  713.221.2320
csmyser@steptoe.com
disaak@steptoe.com
rcox@steptoe.com

**ATTORNEYS FOR RESPONDENTS STRAIFE, LLC, HYPERFOCAL COMMUNICATIONS,  LLC AND JOSEPH P. FLEMING**

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................... ii

I.      SUMMARY OF ARGUMENT .................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND..............................................2

III.    ARGUMENT.............................................................................................................7

        A.      Good Cause Exists to Find that Respondents Did Not Waive Their
                Objections to the Subpoenas Under the Unusual Circumstances in this
                Case.................................................................................................................7

        B.      The Ex Parte Nature of the Section 1782 Application Is Further Reason
                Why this Court Should Consider Respondents' Challenges to the
                Subpoena.......................................................................................................10

        C.      The Subpoena Requests are Improper and Beyond the Appropriate Scope
                of Legitimate Section 1782 Discovery. .......................................................11

                1.      The Subpoena Requests are Overbroad, Unduly Burdensome, and
                        Not Relevant to Petitioner's U.K. Claims under the Fourth *Intel*
                        Factor. ............................................................................................... 12

                2.      The Subpoena Inappropriately Seeks to Abuse the Section 1782
                        Process to Obtain Discovery for Petitioner's Claims Against
                        Respondents in the D.D.C. Action..................................................... 14

                3.      Petitioner's Allegedly "Contemplated" Claims Are Too
                        Speculative to Support Discovery Under Section 1782........................ 15

        D.      Respondents' Specific Objections to the Requests.......................................17

                1.      Recurring Objection:........................................................................ 17

                2.      Objections to Individual Requests: ................................................... 20

IV.     CONCLUSION........................................................................................................23

CERTIFICATE OF SERVICE ..............................................................................................24

i

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andra Grp., LP v. JDA Software Grp., Inc.*,
 312 F.R.D. 444 (N.D. Tex. 2015) ...................................................................................7

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
 55 F.4th 469 (5th Cir. 2022) .........................................................................................10

*Cook v. U.S. Xpress, Inc.*,
 2025 WL 593745 (D.N.J. Feb. 24, 2025) .......................................................................8

*Glock v. Glock, Inc.*,
 797 F.3d 1002 (11th Cir. 2015) ....................................................................................14

*Gor Investment Ltd. et al. v. Straife, LLC et. al*,
 Civ. No. 1:25-cv-4506-EGS ....................................................................................4, 19

*In re Asia Maritime Pac. Ltd.*,
 253 F. Supp. 3d 701 (S.D.N.Y. 2015) ...........................................................................16

*In re Denture Cream Prods. Liab. Litig.*,
 292 F.R.D. 120 (D.D.C. 2013).................................................................................7, 10

*In re Lucille Holdings Pte. Ltd.*,
 2022 WL 1421816 (D.D.C. May 5, 2022)....................................................................16

*In re Novalpina Cap. Partners I GP S.A.R.L.*,
 2025 WL 1160854 (S.D.N.Y. Apr. 21, 2025).............................................................16

*In re Pilatus Bank PLC*,
 2021 WL 1890752 (D.N.H. May 11, 2021)..................................................................16

*In re Xaomi, Inc.*,
 801 F. Supp. 3d 635(N.D. Tex. 2025) ..........................................................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
 542 U.S. 241 (2004)....................................................................................10, 11, 12, 14

*Shaw Group, Inc. v. Zurich Am. Ins. Co.*,
 2014 WL 1783955 (M.D. La. May 5, 2014)...................................................................8

*Sphar v. Amica Mut. Ins. Co.*,
 2017 WL 8314657 (M.D. Fla. May 24, 2017)................................................................8

*Venequip, S.A. v. Mustang Mach. Co., LLC*,
   2022 WL 3951173 (S.D. Tex. Aug. 30, 2022) ..................................................11, 12

**Statutes**

28 U.S.C. § 1782.................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 26(b)(1)...............................................................................17

Fed. R. Civ. P. 45(a)(1)(A)(iv) ..................................................................4, 8

Fed. R. Civ. P. 45(d) ..................................................................................4, 8

Fed. R. Civ. P. 45(e) ..................................................................................4, 8

Respondents Straife, LLC ("Straife"), Hyperfocal Communications, LLC ("Hyperfocal"), and Joseph P. Fleming ("Fleming") (collectively, the "Subpoena Respondents") respectfully submit this Opposition to Petitioner Ovik Mkrtchyan's Motion to Compel Production of Documents from Respondents.

## I.    SUMMARY OF ARGUMENT

Petitioner's Motion to Compel should be denied, because the challenged subpoenas exceed the proper scope of discovery under 28 U.S.C. § 1782 and improperly seek merits discovery for a parallel U.S. lawsuit that Petitioners filed against Respondents in the District of Columbia, just weeks after serving them with the Section 1782 subpoenas issued in this proceeding. Respondents did not waive their objections, despite not serving them within fourteen days, because unusual circumstances and good cause justify consideration of those objections. Further, the subpoenas were authorized *ex parte*, without the Court receiving the benefit of full adversarial presentation as to whether the statutory and discretionary requirements for § 1782 discovery were satisfied. In light of the complexity of factual issues in this case, a balanced presentation is necessary for the Court to properly evaluate whether the discovery requests bear a legitimate, non-speculative connection to the asserted foreign proceedings.

For instance, regarding the content of the Subpoena's document requests, only two of them bear a legitimate nexus to Petitioner's pending U.K. libel actions, and Respondents have agreed to produce non-privileged materials responsive to those requests. The remaining five requests are overbroad, unduly burdensome, and lack any meaningful nexus to the pending or contemplated U.K. proceedings for which the Section 1782 discovery was ostensibly sought. These requests instead target broad discovery relating to Petitioner's claims in a recently filed U.S. action, circumventing that court's supervision and the Federal Rules of Civil Procedure. Section 1782

1

does not permit such use, nor does it authorize discovery based on speculative "contemplated" foreign claims.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner initiated this proceeding on October 13, 2025, with an *ex parte* application under 28 U.S.C. § 1782, seeking authorization to issue Subpoenas to the Respondents for the production of documents purportedly in aid of Petitioner's pending and contemplated litigation in the United Kingdom (U.K.).  Petitioner's Memorandum of Law in support of that Application (ECF No. 2) (the "Memorandum") describes the Subpoena Respondents alleged' role in preparing a Report and Letter that were allegedly sent by third parties to the Ambassador of Uzbekistan.  Petitioner alleges that the Report and Letter contained false and defamatory statements about him intended to damage Plaintiff's business interests in Uzbekistan, and those of his company, Gor Investment Ltd.  ECF No. 2 at 5, 13-14.[1]

The Memorandum also described pending libel proceedings in the U.K. against two sets of defendants for which Section 1782 discovery was being sought—defendant Radha Stirling and various defendants associated with the *London Post* (collectively, the "U.K. Libel Defendants"). These libel claims are based on allegedly defamatory content that the U.K. Libel Defendants published about the Petitioner.  ECF No. 2 at 8-9, 14-15.  The Memorandum attached the Declaration of Nigel Tait (ECF No. 5), Petitioner's counsel in the U.K., which describes the U.K. libel claims that Petitioner initiated in April 2025.  ECF No. 5 at ¶¶ 8-12.

The Tait Declaration asserts that in addition to these two pending libel claims, Petitioner and his U.K. counsel "anticipate pursuing additional claims, including claims for libel and in the

---

[1] Citations in this Opposition to page numbers of court filings use the page number generated by the Court's Electronic Filing System at the top of the page.

tort of conspiracy, against defendants subject to jurisdiction in England, and/or including additional defendants in the pending proceedings," that the U.K. Libel Defendants were aided by various unspecified individuals, "including individuals whom [Petitioner] cannot presently identify," ECF No. 5 at ¶ 18, and that the contemplated claims include those against unspecified "additional defendants who caused the publications in the London Post Proceedings and the Stirling Proceedings to be published," *id*. at ¶ 14.

The Tait Declaration further states that Petitioner's "contemplated claims will be based in part on any supporting evidence that is gathered as part of this Application which demonstrates a broader coordinated disinformation campaign." *Id*. at ¶ 20. Neither the Declaration nor the Memorandum identified any specific individuals against whom Petitioner anticipated bringing such "contemplated" claims, their connection to the U.K., or any evidence that such individuals are likely to be subject to the jurisdiction of courts in the U.K. In fact, by stating that Petitioner's contemplated claims will arise from information gained as part of this proceeding, Petitioner is confessing that this 1782 proceeding is a classic fishing expedition.

In describing the purported connection between the Subpoena Respondents and the U.K. libel proceedings, the Memorandum does not set forth any facts connecting the Subpoena Respondents to the U.K. Libel Defendants, any communications or contacts between them, any publication or dissemination by the Subpoena Respondents of any allegedly defamatory content in the U.K., any conduct by the Subpoena Respondents in or directed toward the U.K., or any connections between the Subpoena Recipients and any other persons in the U.K. Instead, the Memorandum asserts that "The allegations in Respondents' 'report' closely track false claims about Mkrtchyan that have appeared in purported articles" "aligned with libelous publications by Stirling and the *London Post*," and contained "similar allegations" to those publications, and

3

speculates that because of these asserted similarities, discovery may produce "supporting evidence of a broader coordinated disinformation campaign and/or a conspiracy."  ECF No. 2, p. 6, 14 & 16.

On November 17, 2025, the Court issued an *ex parte* order authorizing issuance of the Subpoenas.  Petitioner served the Subpoenas on November 18, 2025 (Respondents Straife and Hyperfocal) and November 25, 2025 (Respondent Fleming).  The Subpoenas specified a date for compliance of December 9, 2025.

It is unclear whether the Subpoenas, as served on Respondents, contained the text of Fed. R. Civ. P. 45(d) and (e), as required by Rule 45(a)(1)(A)(iv); the "true and correct" copies of those Subpoenas attached as exhibits to Petitioner's Motion to Compel do not include the text of those provisions, which among other things advise subpoena recipients of the requirement to object within fourteen days of being served with a subpoena.  *See* Declaration of Counsel in Support of Motion to Compel, ECF No. 8-1 at ¶ 1; ECF No. 8-2 (the Subpoenas).

Petitioner's Section 1782 Application (filed October 13, 2025) did not disclose to the Court whether Petitioner was then contemplating initiating any lawsuits against the Subpoena Respondents in the United States.  However, on December 26, 2025—approximately two weeks after the December 9, 2025 deadline stated for compliance with the Subpoenas—Petitioner and his company, Gor Investment Ltd., filed a five-count, 176-paragraph, 46-page Complaint against Respondents Fleming and Straife in the U.S. District Court for the District of Columbia, *Gor Investment Ltd. et al. v. Straife, LLC et. al*, Civ. No. 1:25-cv-4506-EGS (hereafter the "D.D.C. Action"), asserting claims for defamation, tortious interference with contract, and other torts, related to Respondent Fleming's and Straife's alleged roles in the transmission of the Report and Letter to the Ambassador of Uzbekistan.  As reflected in the Complaint and subsequent Amended

4

Complaint (D.D.C. Action, Dkt. No. 25-9, Redline of First Amended Complaint and Original Complaint, attached as Exhibit 1), the D.D.C. Action's subject matter overlaps substantially with the Subpoenas.  Moreover, given the complexity and length of the Complaint, it is reasonable to assume that Petitioner knew at the time of filing this proceeding that it was close to initiating a proceeding in the United States District Court that would result in merits discovery.

As represented in Petitioner's Motion to Compel, an attorney purportedly representing Respondents[2] contacted Petitioner's counsel on December 10, 2025, the day after the stated deadline for compliance.  The Motion to Compel represents that this unidentified attorney "later" requested an extension of time to respond to the Subpoenas, Motion to Compel at 8, but does not specify the date this request was made or whether Petitioner granted it, the amount of time requested for the extension, or whether Petitioner imposed any revised deadlines at that time.

After this extension request, the Motion to Compel does not state whether Petitioner's counsel had any further contact with the unidentified attorney about the Subpoenas prior to the day Petitioner filed his Motion to Compel (February 27, 2026).  By no later than January 16, 2026, however, Petitioner's counsel was aware that attorneys for Steptoe LLP, including undersigned counsel, were representing Respondents Fleming and Straife in the D.D.C. Action.  *See* D.D.C. Action, Dkt. No. 12, at ¶ 3 (referencing an email exchange between Petitioner's counsel and Respondents' counsel in the D.D.C. Action concerning a requested extension of time to file a motion to dismiss and agreed briefing schedule).

On February 19, 2026, Respondents Fleming and Straife filed a Motion to Dismiss the D.D.C. Action.  On February 27, 2026, eight days later, and at least six weeks after Petitioner's

---

[2] The undersigned counsel and Steptoe LLP did not represent Respondents in any capacity until after Petitioners' filing of the Complaint in the D.D.C. Action.

counsel learned of Steptoe's representation of Respondents Fleming and Straife in the D.D.C. Action, Petitioner filed the instant Motion to Compel. The Motion to Compel did not mention or address the pending D.D.C. Action, and at no time did Petitioner's counsel inform Steptoe of the Subpoenas or the Motion to Compel. Rather, after initially learning of the Subpoenas on March 4, 2026, Steptoe raised the Subpoenas and the Motion to Compel with Petitioner's counsel on a March 6, 2026 meet and confer in the D.D.C. Action.

Steptoe and Petitioner's Counsel discussed the Subpoenas on two subsequent calls on March 9 and March 17, 2026, but were not able to reach an agreement to dispose of the Motion to Compel or to narrow the scope of the subpoena. On the March 17, 2026 call, Respondents' counsel proposed to search for and produce documents responsive to Request Nos. 3 and 4 of the Subpoena, which Respondents agreed were relevant to the U.K. litigation. Those two Requests are as follows:

> 3.      All Documents and Communications exchanged with, or relating to, *The London Post*, 2Trom Media Group, Viktor Tokarev, Moscow Media Group, Radha Sterling, IPEX (Interpol and Extradition) Reform, Detained in Dubai, Due Process International, Kristian Lasslett, Thomas Rowley, or any officers, directors, employees, agents, or representatives of these organizations or individuals, that relate to: Petitioner, Gor Investment Limited, Uktam Aripov, Ulugbek Shadmanov, United Cement Group, or their respective officers, directors, employees, agents, or representatives.
>
> 4.      All Documents and Communications that relate to any articles, blog posts, online content, websites, letters, investigation summaries, or reports regarding Petitioner, Uktam Aripov, or Gor Investment Limited, including but not limited to any efforts to get such items published, posted, or otherwise disseminated.

Under Respondents' proposal, Petitioners would agree to withdraw their Motion to Compel, without prejudice, and withdraw the remaining five document requests in the Subpoenas, which Respondents contend are not relevant to the U.K. litigation and not legitimate subjects of discovery under Section 1782, but which overlap with Petitioner's claims against Respondents Fleming and Straife in the D.D.C. Action. Petitioner's counsel did not agree to this proposal and requested that Respondents provide in writing their position as to each document request.

On March 19, 2026, Respondents' counsel served Petitioner's counsel with Respondent Fleming's Objections and Responses to the Subpoena, which reiterated Respondents' position that they would produce documents responsive to Request Nos. 3 and 4, but not the remaining five Requests, and advised counsel that the other two Subpoena Respondents would be serving substantially similar objections. On March 20, 2026, Respondents' and Petitioners' counsel held an additional meet and confer regarding the Subpoenas, but could not reach an agreement. Respondents Straife and Hyperfocal served their Objections and Responses to the Subpoenas later that same day.

## III.   ARGUMENT

### A.   Good Cause Exists to Find that Respondents Did Not Waive Their Objections to the Subpoenas Under the Unusual Circumstances in this Case.

Although a failure to timely serve written objections to a subpoena typically waives those objections, "the failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown." *Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 448-49 (N.D. Tex. 2015) (internal quotation omitted). Unusual circumstances include those where "(1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; ... (2) the subpoenaed witness is a nonparty acting in good faith; ... and (3) counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged [the] legal basis for the subpoena." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 124 (D.D.C. 2013).

Here, there are multiple unusual circumstances that counsel against a finding of waiver. First, by Petitioner's own admission, an attorney representing Respondents contacted Petitioner's counsel the day after the December 9, 2025 date for compliance with the Subpoena, and later sought an extension of time for Respondents to comply, prior to Respondents lodging any

7

challenge the legal basis for the subpoena.  Based on what is revealed about this requested extension in Petitioner's motion, it would have been reasonable for Respondents and the attorney representing them to understand that this extension included an extension of time to object.  *Shaw Group, Inc. v. Zurich Am. Ins. Co.*, Civ. No. 12-257-JJB-RLB, 2014 WL 1783955, at \*4 (M.D. La. May 5, 2014) (rejecting proponent's argument that a grant of extension for time to comply with subpoena did not amount to an extension of time to object, and finding that subpoena recipient acted in good faith and "'reasonably believed that the extension of time to respond to the subpoena included an extension of time to object'").

To the extent Petitioner finds fault with Respondents for not contacting Petitioner's counsel one day earlier, as noted above, it appears that Petitioner may have failed to include the provisions of the Federal Rule 45(d) on the subpoena, as required by Fed. R. Civ. P. 45(a)(1)(A)(iv).  If so, that defect may have contributed to that brief delay, given that Rule 45(d) is the rule that spells out the 14-day deadline for objections.  *See Cook v. U.S. Xpress, Inc.*, Civ. No. 23-3228 (MAS) (RLS), 2025 WL 593745, at \*3 (D.N.J. Feb. 24, 2025) (declining to grant motion to compel where subpoena proponent failed to include text of Rule 45(d) and (e) in the Subpoena); *Sphar v. Amica Mut. Ins. Co.*, Case No. 6:16-cv-2221, 2017 WL 8314657, at \*1 (M.D. Fla. May 24, 2017) (declining to grant unopposed motion to compel and finding subpoena that failed to set out the text of Rule 45(d) and (e) invalid).  In any event, Petitioner was not prejudiced by Respondents' attorney failing to contact Petitioner's counsel until the day after the Subpoenas' stated due date.

The record is silent as to whether Petitioner's counsel and the previous attorney for Respondents were in any further communication about the Subpoenas between the date of the extension request, and Petitioner's filing of his Motion to Compel on February 27, 2026.  But to the extent Petitioners were frustrated by any lack of progress in responding to the Subpoenas, or

8

believed that Respondents or their counsel were not acting diligently, Petitioner's counsel were aware of Respondents' attorneys at Steptoe LLP in the related D.D.C. Action by no later than mid-January, at least six weeks before Petitioner filed his Motion to Compel. At any time during that period, Petitioner could have asked the Steptoe attorneys about the Subpoenas. Of course, doing so would have alerted those attorneys to those Subpoenas' existence, leading to a response which would have eliminated any grounds for a "default" Motion to Compel. In any event, the fact that Petitioner did not raise the Subpoenas with Respondents' Steptoe attorneys (or seemingly with the attorney that initially contacted them) at any point during that six-week period to seek to expedite a response belies any claim that Petitioner was prejudiced by any delay.

Petitioner's pending, parallel domestic lawsuit against Respondents in the District of Columbia, filed right on the heels of the Subpoenas' original December 9, 2025 due date, is a second unusual circumstance that counsels against a finding of waiver. It is unlikely that Petitioner was not planning imminently to sue the Subpoena Respondents in the United States at the same time he filed the Section 1782 proceeding. Petitioner's Complaint in the D.D.C. Action alleges that Petitioner knew of Respondents' alleged role as the "authors" of the Report by September 11, 2025, more than a month earlier, and that Complaint was filed approximately five weeks after the *ex parte* Order granting the Section 1782 Petition. Yet Petitioner was silent regarding any prospect of such litigation in his Section 1782 Application, despite electing to proceed *ex parte*.

Even after the D.C. matter had been pending for over two months, Petitioner still did not alert this Court to the existence of the D.D.C. case when filing his Motion to Compel per this Court's Rules. *See* Local Rule 5.2, Related Litigation Policy ("The parties must advise the Court of related current or recent litigation and of directly affected non-parties.").

9

Third, except for Request Nos. 3 and 4, "the subpoena is overbroad on its face and exceeds the bounds of fair discovery," another circumstance supporting a lack of waiver. *In re Denture Cream Prods. Liability Litig.*, 292 F.R.D. 120, 124 (D.D.C. 2013). As discussed further below, the Subpoenas include several sweeping requests that have no discernable nexus to the U.K. Libel Defendants or to any publication or dissemination of information in the U.K. Instead, those requests focus on broad and identical subject matter to Petitioner's allegations against the Subpoena Respondents in the D.D.C. Action.

Finally, there is good cause to find that the Subpoena Respondents did not waive their objections. Petitioner does not appear to have been prejudiced by any delay in responding to the Subpoena. Shortly after Steptoe learned of the Subpoenas, Respondents agreed to produce documents in response to the two Subpoena Requests that are relevant to Petitioner's pending claims against the U.K. Libel Defendants. And, though the record set forth in Petitioner's Motion to Compel is unclear on this point, based on Respondents' request for an extension, it would have been reasonable for Respondents or the attorney who allegedly represented them to believe that an extension had been granted.

**B.      The Ex Parte Nature of the Section 1782 Application Is Further Reason Why this Court Should Consider Respondents' Challenges to the Subpoena.**

Although it is not unusual for an initial decision on a Section 1782 proceeding to be made on an *ex parte* basis, the Fifth Circuit has required that where a subpoena was authorized *ex parte*, the respondent must be afforded the opportunity to raise the same appropriate challenges to its issuance that are available in an initial hearing on the application. These include whether the subpoena was appropriately issued under the three statutory factors set out in Section 1782, and the four additional factors recognized by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45 (2004). *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55

F.4th 469, 474-75 (5th Cir. 2022); *see also In re Xaomi, Inc.*, 801 F. Supp. 3d 635, 637-38, 640-41(N.D. Tex. 2025) (*ex parte* consideration of Section 1782 application was not appropriate on the facts of that case, and noting benefits of adversary testing of Section 1782 applications).

In this case, adversarial testing is vital to highlight for the Court the gulf between the two Subpoena requests that are legitimately tailored to the U.K. Litigation and thus proper subjects of discovery, versus those requests that have no genuine nexus to the U.K. Litigation, and instead seek broad-based discovery going to the merits of Petitioner's claims in the D.D.C. action, outside of that court's supervision.

**C.      The Subpoena Requests are Improper and Beyond the Appropriate Scope of Legitimate Section 1782 Discovery.**

A court considering a request for discovery under Section 1782 must first determine whether the three statutory requirements are met: "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign or international tribunal; and (3) the application is made by a foreign or international tribunal or an interested person." *Venequip, S.A. v. Mustang Mach. Co., LLC*, No. 4:21-MC-2391, 2022 WL 3951173, at *1 (S.D. Tex. Aug. 30, 2022) (citing *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012)).  The second statutory factor, requiring that the discovery must be "for use" in a foreign proceeding, is relevant here, particularly with respect to Petitioner's "contemplated" claims discussed further below.[3]

If the three statutory requirements are met, the court turns to four additional factors recognized by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241

---

[3] In the argument that follows, Respondents begin with the second aspect of the Section 1782 analysis—the salient *Intel* factors—as opposed to the statutory factors, because the *Intel* factors are particularly relevant to most overriding issues with the Section 1782 application in this case, which are the overbreadth and lack of relevance or nexus to the foreign claims asserted.

(2004) to determine whether the court should exercise its discretion to grant the Section 1782 application. *Id*. at \*2. Those factors are:

> "(1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; and (4) whether the discovery requested is unduly intrusive or burdensome."

*Id*.

### 1. The Subpoena Requests are Overbroad, Unduly Burdensome, and Not Relevant to Petitioner's U.K. Claims under the Fourth *Intel* Factor.

The five Subpoena requests to which Respondents object to producing documents are not appropriate for discovery under Section 1782, because those requests are overbroad and lack any genuine nexus to Petitioner's U.K. claims. Petitioner has two pending claims against the U.K. Libel Defendants, both based on the publication of allegedly defamatory content about Petitioner on websites or other online postings for public consumption. The five disputed requests' lack of relevance to these claims is best illustrated in comparison to two Requests (Nos. 3 and 4) that Respondents concede *are* relevant to the U.K. claims, and for which Respondents have agreed to produce responsive documents. Request No. 3 seeks:

> 3. All Documents and Communications exchanged with, or relating to, *The London Post*, 2Trom Media Group, Viktor Tokarev, Moscow Media Group, Radha Sterling, IPEX (Interpol and Extradition) Reform, Detained in Dubai, Due Process International, Kristian Lasslett, Thomas Rowley, or any officers, directors, employees, agents, or representatives of these organizations or individuals, that relate to: Petitioner, Gor Investment Limited, Uktam Aripov, Ulugbek Shadmanov, United Cement Group, or their respective officers, directors, employees, agents, or representatives.

Because this Request calls for "All Documents and Communications exchanged with, *or relating to*," the U.K. Libel Defendants or various publications with which those individuals are

associated, responsive documents would include not only documents or communications between Respondents and the U.K. Libel Defendants, but also those that make any reference to the U.K. Libel Defendants or reflect discussions about them.

Similarly, Request No. 4 seeks:

> 4.    All Documents and Communications that relate to any articles, blog posts, online content, websites, letters, investigation summaries, or reports regarding Petitioner, Uktam Aripov, or Gor Investment Limited, including but not limited to any efforts to get such items published, posted, or otherwise disseminated.

Respondents interposed an objection to clarify that they would interpret the Request as limited to documents or communications reflecting any involvement by Respondents in the publication or attempted publication of articles, blog posts, or online content in the U.K. about Petitioner, his company Gor Investment Ltd., or his associate Uktam Aripov, and excluding documents that have no nexus to the actual or attempted publication of such material in the U.K. or by the U.K. Libel Defendants.  Respondents otherwise agreed to respond to this Request.  In so responding, Respondents would be producing any non-privileged documents and communications in their possession that relate to actual or attempted publication of allegedly defamatory material about the Petitioner online in the U.K.

In contrast, the Subpoena's other five requests (discussed individually below) do not have any discernable nexus to the U.K. Libel Defendants, or to the publication of any online content about Petitioner in or directed at the U.K.  Indeed, the Requests are not drafted to require *any* nexus to the U.K., the dissemination of any information to the U.K., conduct occurring in or directed at the U.K., or any documents or communications involving individuals located in the U.K. or otherwise subject to jurisdiction of the U.K. courts.  In short, these requests are not at all tailored

13

to the claims in Petitioner's U.K. litigation or the U.K. Libel Defendants and are not appropriate subjects for discovery under Section 1782.

## 2. The Subpoena Inappropriately Seeks to Abuse the Section 1782 Process to Obtain Discovery for Petitioner's Claims Against Respondents in the D.D.C. Action.

The Subpoena's overbreadth and lack of relevance to the U.K. claims betrays an attempt to obtain merits discovery relating to Petitioner's claims against Respondents in the D.D.C. Action, while circumventing that court's supervision over discovery. A Section 1782 applicant's "attempt[] to use foreign litigation as a ruse for obtaining discovery in the United States without complying with the usual procedures of the Federal Rules of Civil Procedure" is improper under the third *Intel* factor, and respondents "can and should bring evidence of such chicanery to the § 1782 court's attention." *Glock v. Glock, Inc.*, 797 F.3d 1002, 1008-09 (11th Cir. 2015).

Here, the Subpoena is aimed at discovery going to the merits of the D.D.C. action. For example, Request No. 1 seeks "All Documents and Communications that relate to the Report, the Letter, or any part of their content." The Report is the centerpiece of Petitioner's claim against Respondents in the D.D.C. action. Petitioner alleges that Respondents prepared this Report and caused it to be sent to the Ambassador of Uzbekistan in Washington, D.C., and that the Report was then disseminated to unnamed government officials in Uzbekistan, who allegedly took actions to cause other third parties doing business in Uzbekistan to halt work on Petitioner's business projects there. *See* D.D.C. Action, Plaintiffs' First Amended Complaint ¶¶ 82-91, 102, 173-177.

These allegations are untethered to any actions that took place in the U.K., let alone the publication of allegedly defamatory content online for public consumption there, which is the gravamen of Petitioner's claims against the U.K. Libel Defendants. Petitioner's only argument to connect the Report to his claims against the U.K. Libel Defendants is to speculate that, because of alleged similarities in some of the statements, the Report and the U.K. Libel Defendants must have

14

been part of a coordinated scheme.  Documents relating to the Report that are not otherwise responsive to Request Nos. 3 and 4—that is, that do not relate in any way to the U.K. Libel Defendants or other online publications in the U.K.—would not be probative of any connection between the Report and the U.K. claims.  Even if such documents could be relevant to Petitioner's claims against Respondents in the D.D.C. Action, that fact would not convert this discovery effort into an appropriate use of Section 1782.

### 3. Petitioner's Allegedly "Contemplated" Claims Are Too Speculative to Support Discovery Under Section 1782.

In addition to his two pending libel claims, Petitioner alleges that he is contemplating bringing libel claims in the U.K. against additional, unspecified defendants "subject to jurisdiction in England." ECF No. 5, Declaration of Nigel Tait ¶ 18.  Petitioner's contemplated claims involve the publication of allegedly defamatory content about Petitioner in the same publications involved in the cases against the U.K. Libel Defendants, and in "other [unidentified] defamatory third-party publications." *Id*.  By agreeing to respond to Request Nos. 3 and 4, Respondents are committing to produce any responsive, non-privileged documents in their possession that would bear on these purported claims against publishers in the U.K.  In contrast, documents that are not responsive to Request Nos. 3 and 4, but otherwise responsive to the remaining subpoena requests, are not probative of Petitioner's contemplated libel claims as articulated by Petitioner's own lawyer.

Further, this same lawyer concedes that Petitioner's contemplated claims and defendants "includ[e] individuals whom [Petitioner] cannot presently identify." *Id*.  Petitioner does not identify any potential defendant for its contemplated claims and does not specify any individuals "subject to jurisdiction in England" about whom it is seeking or expects to receive discovery in the instant Requests.  But to obtain discovery under Section 1782 on the basis of "contemplated" future claims, such claims must be reasonably contemplated—that is, not unduly speculative.

15

Courts have repeatedly rejected discovery under Section 1782 in the face of similarly speculative claims to the ones here. *E.g., In re Pilatus Bank PLC*, Civ. No. 20-mc-94-JD, 2021 WL 1890752, at *8-9 (D.N.H. May 11, 2021) (petitioner failed to satisfy section 1782's requirement that discovery be "for use" in litigation, because, where "discovery is sought simply for the purpose of determining whether to bring an action 'depending on what the evidence shows,'" the petitioner's allegedly prospective claims were too speculative and not "reasonably contemplated"); *In re Lucille Holdings Pte. Ltd.*, Dkt. No. 1:21-mc-99 (GMH), 2022 WL 1421816, at *15 (D.D.C. May 5, 2022) (litigation not "reasonably contemplated" under section 1782, where petitioner "did not know where, when, or even against whom the allegedly contemplated foreign proceedings would be brought," and "was searching for the factual basis of a claim"); *In re Asia Maritime Pac. Ltd.*, 253 F. Supp. 3d 701, 702-03, 705  (S.D.N.Y. 2015) (declining to allow discovery under section 1782 to permit "overly broad fishing expedition" requiring subpoena recipients, which were various banks, to "conduct broad searches for information when the Petitioner has provided no basis to believe that [the entity that was the subject of the foreign litigation] ever transacted business through any particular bank"); *In re Novalpina Cap. Partners I GP S.A.R.L.*, Dkt. No. 23-Misc.-25 (PGG), 2025 WL 1160854, at *20-23 (S.D.N.Y. Apr. 21, 2025) (allegedly contemplated claims were too speculative, where subpoenaing party could not determine whether it had a viable civil fraud claim under Luxembourg law without obtaining the Section 1782 discovery).

Petitioner's inability to identify any prospective defendants against which it is contemplating claims, let alone those who might be subject to jurisdiction in the U.K., is telling. In his declaration, Petitioner's U.K. lawyer acknowledges the "significant jurisdictional obstacles to bringing claims in England and Wales against defendants domiciled outside England …,

16

particularly in actions for libel." ECF No. 5, Declaration of Nigel Tait ¶ 21. Yet Petitioner fails to offer any concrete reason why the remaining five discovery requests are at all likely to lead to the identification of a defendant who will be subject to jurisdiction in the U.K., or indeed to produce any evidence probative of its contemplated libel claims in the U.K. Apart from their value to Petitioner in obtaining discovery going to the merits of the D.D.C. action, the disputed Subpoena requests are an invalid fishing expedition, because speculative hopes that discovery might turn up something useful that could lead to a viable, future claim are not enough to make such a claim "reasonably contemplated" for purposes of Section 1782.

> **D.** **Respondents' Specific Objections to the Requests.**

For the reasons stated above, all five of the Subpoena requests to which Respondents object to producing documents suffer from the same fatal problems of overbreadth, lack of proportionality under Fed. R. Civ. P. 26(b)(1), lack of relevance to the U.K. litigation, and a lack of any specific nexus to the U.K., in addition to the impermissibly speculative nature of the "contemplated" foreign claims for which the discovery was being sought. Accordingly, Respondents' objections to these five requests all contain virtually identical language making these points. To avoid unnecessary repetition of that language, in this Opposition, Respondents provide this recurring objection at the start of this section, followed by the individual requests and individualized portions of Respondent's objections thereto. Respondents' Objections to the Subpoenas are attached hereto as Exhibit 2.

> **1.** **Recurring Objection:**

Respondent objects that the request is overbroad, unduly burdensome, and not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1), in that it seeks information that is not relevant to Petitioner's claims in the U.K. litigation. Petitioner's U.K. claims involve pending actions for libel against two groups of defendants (the "London Post Defendants" and

Defendant Stirling, and collectively, the "U.K. Libel Defendants"). ECF No. 5, Declaration of Nigel Tait ¶¶ 9-12. Petitioner also claims to be contemplating "further claims in respect of additional defendants who caused the publications in the London Post Proceedings and the Stirling Proceedings to be published, and/or caused, participated in or authorized the publication of any other publications forming part of the campaign." ECF No. 5, Declaration of Nigel Tait ¶ 14. The Subpoena includes two other requests, Request Nos. 3 and 4, that seek documents and communications relating to the U.K. Libel Defendants, and to the publication or efforts to publish content concerning Petitioner, Petitioner's company. Gor Investment Limited, and Uktam Aripov, an associate of Petitioner. As stated below, Respondent will produce non-privileged documents responsive to Request Nos. 3 and 4 in Respondent's possession, custody and control located after a reasonable search and subject to Respondents' objections. But in contrast to Request Nos. 3 and 4, the instant Request does not seek communications with, or documents disseminated to or otherwise relating to, the U.K. Libel Defendants, or to any other publisher or publication about Petitioner in the U.K. Instead, it seeks [**quote and/or description of Request**], without any nexus to the U.K. Libel Defendants or to any publication of such material in the U.K. As such, the Request seeks the production of documents that are not relevant to Petitioner's pending libel claims in the U.K. litigation, or to any contemplated libel claims against additional, unspecified individuals in the U.K.

To the extent Petitioner contends that documents responsive to this Request are potentially relevant to additional, unspecified "contemplated" claims against unidentified individuals and/or entities in the U.K., such claims, as described in the Tait Declaration and in Petitioners' other filings in this proceeding, are too vague and speculative to permit the broad discovery sought from

18

Respondent in the United States.  Neither these "contemplated" claims nor the instant Request are[4] supported by any concrete or specifically articulated nexus to the U.K. or to any individual likely to be subject to jurisdiction of the U.K. courts.  *See* ECF No. 5, Declaration of Nigel Tait ¶ 21 (noting the "significant jurisdictional obstacles to bringing claims in England and Wales against defendants domiciled outside England in the United States, particularly in actions for libel").

Additionally, to the extent Petitioner's "contemplated" claims in the U.K. involve a suspected link between publications by the U.K. Libel Defendants and other unspecified and unknown individuals, Petitioner may seek discovery concerning those such alleged connections from the U.K. Libel Defendants, who are subject to discovery in the U.K. litigation.  Despite allegedly initiating the U.K. litigation approximately one year ago in April 2025, ECF No. 5, Declaration of Nigel Tait ¶ 8, Petitioner to date has not identified any specific individuals who it contemplates adding as "additional defendants in the pending proceedings" in the U.K.  *Id*. at ¶ 18.

Instead, the instant Request seeks information relating to its claims asserted against Respondent in Petitioner's lawsuit filed in the United States District Court for the District of Columbia, *Gor Investment Ltd., et al. v. Straife LLC, et al.*, Civil Action No. 1:25-CV-04506, filed on December 26, 2025.  Accordingly, Respondent further objects that the Request is an inappropriate attempt to circumvent limitations or schedule on discovery in the United States litigation, and to subject Respondent to unduly burdensome and duplicative discovery.

For the reasons stated in these objections, Respondent will not produce documents responsive to this Request.

---

[4] This sentence in Respondent Flemings as-served objections contains a typo that results in a double-negative, such that the sentence incorrectly reads: "Neither these 'contemplated' claims nor the instant Request are **not** supported…."  That typo is corrected here.

19

2.      **Objections to Individual Requests:**

1.      All Documents and Communications that relate to the Report, the Letter, or any part of their content. This includes, but is not limited to (a) any drafts; (b) Communications about final or draft versions; (c) Documents and Communications regarding any of the content or subject matter of the Report or Letter; (d) Communications about that content or subject matter with alleged sources of information for it (including but not limited to the "sources" identified throughout the Report and the "former U.S. law enforcement and intelligence community experts" identified in the Letter); and (e) Documents and Communications about decisions to include allegations regarding each entity named in the Report or Letter, including Petitioner, Komil Allamjonov, Uktam Aripov, Corey Lewandowski, Dmitry Li, Akmal Mamarkhimov, Stephen Payne, Rick Perry, Mike Pompeo, and Worldwide Strategic Partners.

**RESPONSE  (Individualized Portion):**

Instead, [the Request] seeks "All Documents and Communications that relate to" the Report and Letter that were allegedly sent to Uzbekistan's Ambassador to the United States, without any nexus to the U.K. Libel Defendants or to any publication of such material in the U.K. As such, the Request seeks the production of documents that are not relevant to Petitioner's pending libel claims in the U.K. litigation, or to any contemplated libel claims against additional, unspecified individuals in the U.K.

…

Respondent further objects that subpart (e) of the Request is additionally overbroad, unduly burdensome, and not proportional to the needs of the case, in that it seeks documents and communications about statements in the Report and Letter concerning numerous individuals other than Petitioner, and Petitioner has not articulated any basis to pursue claims for libel on the basis of statements concerning individuals other than the Petitioner.

20

> 2.    All Documents and Communications that refer to or relate to Petitioner, Gor Investment Limited, or Uktam Aripov. This specifically includes, without limitation, any other reports or letters about them, and any Communications about them within or among Respondents or with United Cement Group, Denis Trusevich, Ulugbek Shadmanov, Stephen Akard, Stephen Payne, Logan Somera, Linden Energy, Linden Strategies, American LNG Services, Linden Energy Holdings, Linden Government Solutions, Team Eagle LLC, Bose McKinney & Evans LLP, Bose Public Affairs Group LLC, or their respective officers, directors, agents, employees, or representatives.

**RESPONSE (Individualized Portion)**:

Instead, [the Request] seeks "All Documents and Communications that refer to or relate to Petitioner, Gor Investment Limited, or Uktam Aripov," without any nexus to the U.K. Libel Defendants or to any publication of such material in the U.K. As such, the Request seeks the production of documents that are not relevant to Petitioner's pending libel claims in the U.K. litigation, or to any contemplated libel claims against additional, unspecified individuals in the U.K.

…

Respondent further objects that the Request is additionally overbroad, unduly burdensome, and not proportional to the needs of the case, in that it seeks communications with numerous individuals—United Cement Group, Denis Trusevich, Ulugbek Shadmanov, Stephen Akard, Stephen Payne, Logan Somera, Linden Energy, Linden Strategies, American LNG Services, Linden Energy Holdings, Linden Government Solutions, Team Eagle LLC, Bose McKinney & Evans LLP, Bose Public Affairs Group LLC—many of whom appear to be United States Persons, and without any articulation of any nexus between such Persons and the U.K.

> 5.    All Documents and Communications that refer to or relate to Petitioner's detention in Uzbekistan, plans to detain Petitioner and/or charge Petitioner with crimes, or a desire to detain Petitioner and/or charge Petitioner with crimes.

21

**RESPONSE (Individualized Portion)**:

Instead, it seeks "All Documents and Communications that refer to or relate to Petitioner's detention in Uzbekistan, plans to detain Petitioner and/or charge Petitioner with crimes, or a desire to detain Petitioner and/or charge Petitioner with crimes," without any nexus to the U.K. Libel Defendants or to any publication of such material in the U.K., or to any alleged conduct occurring within the U.K.  As such, the Request seeks the production of documents that are not relevant to Petitioner's pending libel claims in the U.K. litigation, or to any contemplated libel claims against additional, unspecified individuals in the U.K.

> 6.    All Documents and Communications related to (a) any monetary compensation or payments of anything of value (including but not limited to cryptocurrency) offered to, promised to, or received by You or any other person or entity for activities that relate to Petitioner, Gor Investment Limited, or Uktam Aripov, or (b) any contracts or agreements with anyone that encompass activities related to Petitioner, Gor Investment Limited, or Uktam Aripov.

**RESPONSE (Individualized Portion)**:

Instead, [the Request] seeks "All Documents and Communications related to" any alleged contracts, agreements, or compensation entered into or received by Respondent "that encompass activities related to Petitioner, Gor Investment Limited, or Uktam Aripov," without any nexus to the U.K. Libel Defendants or to any publication of such material in the U.K., or to any conduct occurring in or directed at the U.K.  Nor is the request limited to contracts, agreements, or compensation entered into with, or received from, Persons located in the U.K.  As such, the Request seeks the production of documents that are not relevant to Petitioner's pending libel claims in the U.K. litigation, or to any contemplated libel claims against additional, unspecified individuals in the U.K.

> 7.    All Documents and Communications that refer to or relate to United Cement Group or Ulugbek Shadmanov.   This specifically includes, but not limited to, Documents and Communications that show when Respondents began working for, with, or for the benefit of United Cement Group or Shadmanov, the circumstances under which Respondents began doing so, the nature of this work, and the content of and participants in any communications related to the commencement or execution of this work, including but not limited to communications with Alisher Kadirov about this topic.

**RESPONSE (Individualized Portion)**:

Instead, [the Request] seeks "All Documents and Communications that refer to or relate to United Cement Group or Ulugbek Shadmanov," without any nexus to the U.K. Libel Defendants or to any publication of such material in the U.K., or to any alleged conduct occurring within the U.K. or individuals allegedly located within the U.K.  As such, the Request seeks the production of documents that are not relevant to Petitioner's pending libel claims in the U.K. litigation, or to any contemplated libel claims against additional, unspecified individuals in the U.K.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Petitioners' Motion to Compel in its entirety, and enter the attached proposed form of order implementing such determination.

DATED: March 20, 2026       Respectfully submitted,

**STEPTOE LLP**

/s/ Craig Smyser
Craig Smyser
Attorney-in-Charge
State Bar No. 18777575
SDTX Bar No. 848
David Isaak
State Bar No. 24012887
SDTX Bar No. 26694
Rachael Cox
State Bar No. 24137347
SDTX Bar No. 3881153
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone: 713.221.2330
Facsimile:  713.221.2320
csmyser@steptoe.com
disaak@steptoe.com
rcox@steptoe.com

**ATTORNEYS FOR RESPONDENTS
STRAIFE, LLC, HYPERFOCAL
COMMUNICATONS,  LLC
AND JOSEPH P. FLEMING**

## CERTIFICATE OF SERVICE

I hereby certify that on March 20, 2026, the foregoing document was served via electronic mail on all counsel of record in this action.

/s/ Craig Smyser
Craig Smyser

24